## S95A1262. SOUTHWORTH v. SOUTHWORTH.
### (461 SE2d 215)

CARLEY, Justice.

In September 1993, Chester E. Southworth (Husband) filed a petition for separate maintenance and Maria E. Southworth (Wife) answered and counterclaimed for separate maintenance. Thereafter, a number of temporary orders were entered. In April 1994, the motion of Wife's counsel to withdraw was granted and Wife proceeded pro se. On or about July 6, 1994, Wife moved from Georgia. On July 19, 1994, Husband amended his petition for separate maintenance so as to add a count seeking a divorce on the ground that the marriage was irretrievably broken. Service of this amendment was attempted by mailing a copy to the Georgia address of Wife listed in her former counsel's motion to withdraw. See OCGA § 9-11-5 (b); Uniform Superior Court Rule 4.3. Wife filed no answer to Husband's amendment and she did not appear at the scheduled divorce trial. On November 7, 1994, a divorce was granted. The provisions of the final divorce decree

awarded Husband all of the marital property and the custody of and child support for the minor children.

Within the same term of court, Wife filed a motion to set aside the divorce decree, alleging Husband knew that she had moved from Georgia when he amended his petition for separate maintenance to add the divorce count and that he "should have initiated a new complaint and personally served her. . . ." At the hearing on Wife's motion, Husband made the concessions that, shortly prior to Wife's move, they had cohabited and that, at the time he filed the amendment, he knew she had moved and was living "somewhere in California, perhaps Mexico." Based upon Husband's concession as to his cohabitation with Wife, the trial court set aside "the prior Separate Maintenance Orders" and "all prior Court Orders with regard to custody and visitation of the minor children . . . and the division of marital property. . . ." Based upon Husband's concession as to his knowledge that Wife was no longer living in Georgia when he filed the amendment to seek a divorce, the trial court set aside the final divorce decree because of the failure to have served Wife with the amendment "either by publication or the Georgia Long Arm Statute. . . ." In addition, the trial court held that, insofar as Wife's motion had been filed within the same term of court, it had the authority to set aside the final divorce decree "within its own discretion."

Husband applied for a discretionary appeal from the trial court's order. This appeal results from the grant of his application.

1. Where a decree for permanent alimony has been entered in a separate maintenance action and there has been no subsequent divorce, a voluntary cohabitation "shall annul and set aside" that prior decree. OCGA § 19-6-12; *Brown v. Brown*, 210 Ga. 233 (78 SE2d 516) (1953). Here, however, a divorce had been granted. Therefore, the orders entered in connection with the prior separate maintenance action had been superseded by the final divorce decree. OCGA § 19-6-10; *Browne v. Browne*, 242 Ga. 107 (249 SE2d 594) (1978). It follows that the trial court's order which set aside "the prior Separate Maintenance Orders" on the basis of Husband's concession as to his cohabitation with Wife was superfluous.

2. Under OCGA § 19-5-4 (a) (4), a divorce shall not be granted where "[t]here has been a voluntary condonation and cohabitation subsequent to the acts complained of, with notice thereof." However, this statute establishes only that voluntary condonation and cohabitation constitute a defense to a pending divorce action, not a ground for setting aside a previously entered divorce decree. "Matters of . . . condonation should be set up before final verdict. [Cit.]" *Young v. Young*, 188 Ga. 29, 33 (1) (2 SE2d 622) (1939). It follows that the trial court erred insofar as it set aside "all prior Court Orders with regard to custody and visitation of the minor children . . . and the division

of marital property" on the basis of Husband's concession as to his cohabitation with Wife.

Moreover, the cohabitation in this case occurred before, rather than after, Husband filed his amendment seeking a divorce on the ground that the marriage was irretrievably broken. Compare *Woods v. Woods*, 241 Ga. 393 (245 SE2d 651) (1978); *Lindsay v. Lindsay*, 241 Ga. 166 (244 SE2d 8) (1978). Accordingly, even if Wife had pled the cohabitation defensively to Husband's amendment seeking a divorce, no viable defense would have been raised thereby.

3. Due process requires that a defendant be given notice of the action pending against her. *Womble v. Commercial Credit Corp.*, 231 Ga. 569 (203 SE2d 204) (1974). In this state, service of process is controlled by OCGA § 9-11-4 and, in the absence of service in conformity with the provisions of that statute, the trial court obtains no jurisdiction over the person of the defendant and a judgment rendered against her is absolutely void. *DeJarnette Supply Co. v. F. P. Plaza, Inc.*, 229 Ga. 625, 626 (4) (193 SE2d 852) (1972).

In accordance with the provisions of OCGA § 9-11-4 (7), personal service of process was made on Wife in connection with Husband's separate maintenance action. *Stallings v. Stallings*, 127 Ga. 464, 465 (8) (56 SE 469) (1907); *Baldwin v. Baldwin*, 116 Ga. 471 (42 SE 727) (1902). Compare *Walker v. Walker*, 228 Ga. 615 (1) (187 SE2d 289) (1972). Accordingly, the trial court had personal jurisdiction over Wife as to *that* action. As to his amendment adding a claim for divorce, Husband contends that he was not required to re-serve Wife with process in accordance with OCGA § 9-11-4, but was authorized merely to mail the amendment to Wife's last known Georgia address in accordance with the subsequent service provisions of OCGA § 9-11-5 (b). Whether OCGA § 9-11-5 can be employed by the plaintiff in a separate maintenance action so as to serve the defendant with a subsequent amendment asserting a claim for divorce appears to be a question of first impression.

In relevant part, OCGA § 9-11-5 (a) relates to the service of "every pleading subsequent to the original complaint" and Husband urges that his amendment was such a pleading. Under OCGA § 9-11-15, there is no prohibition against the pleading of an additional cause of action by amendment. *McDonald v. Rogers*, 229 Ga. 369, 378 (7) (191 SE2d 844) (1972), overruled on other grounds, *Gilman Paper Co. v. James*, 235 Ga. 348 (219 SE2d 447) (1975). However, the purpose of Husband's amendment was not merely to add a new cause of action for divorce and thereby seek relief additional to that sought in his still pending petition for separate maintenance. Although an action for separate maintenance and an action for divorce both grow out of the marriage relationship and relate to the same subject matter, they have different purposes and raise different questions. *Ward v. Ward*,

223 Ga. 868, 871 (2) (159 SE2d 81) (1968); *Allen v. Allen*, 194 Ga. 591 (1) (22 SE2d 136) (1942). Indeed, the purposes and questions are so different that the law expressly provides that an action for separate maintenance "shall be held in abeyance when a petition for divorce is filed bona fide by either party and the judge presiding [in the divorce action] has made his order on the motion for alimony." OCGA § 19-6-10. Thus, Husband's amendment was not a "pleading subsequent to the original complaint" for separate maintenance within the meaning of OCGA § 9-11-5 (a). It was itself an original complaint for divorce, the very purpose of which was to seek relief which would replace totally the relief sought in Husband's original complaint for separate maintenance. Accordingly, Husband's subsequent pleading did not state a cause of action which merely was additional to his original claim for separate maintenance, but an entirely new cause of action which, if successful, would obviate that original claim.

Once a party has been apprised of the pendency of a lawsuit, his constitutional right to notice can be met through subsequent service by mail in accordance with OCGA § 9-11-5 (b). *Allen v. Bd. of Tax Assessors of Paulding County*, 247 Ga. 568 (277 SE2d 660) (1981). However, OCGA § 9-11-5 (b) "cannot be used as a means to circumvent the Due Process Clause." Wright & Miller, Fed. Prac. & Procedure: Civil 2d, § 1146, p. 426. The purpose of Husband's amendment was to initiate an entirely new action for divorce and thereby secure relief which would obviate his original action for separate maintenance. Compare *Allen v. Bd. of Tax Assessors of Paulding County*, supra. Accordingly, Husband's new cause of action for divorce could not be instituted through amendment to his original action for separate maintenance and the service provisions of OCGA § 9-11-5 (a). Husband was required to serve Wife with process in accordance with OCGA § 9-11-4, so as to afford her notice of the pendency of the new action for divorce and to afford the trial court personal jurisdiction over her with regard to that new action. At the time he filed his amendment, Husband knew Wife had moved from Georgia. If he knew her address, he should have attempted to have her served personally in accordance with OCGA § 9-11-4 (e) (2). If he did not know her address, he should have attempted to have her served by publication in accordance with OCGA § 9-11-4 (e) (1). Because he did neither, Wife was afforded no notice of the pendency of the divorce action and the trial court was afforded no personal jurisdiction over her with regard to that action. It follows that the final divorce decree was absolutely void and the trial court correctly set that decree aside under OCGA § 9-11-60 (d) (1).

4. Since the trial court's order was authorized under OCGA § 9-11-60, we need not address the issue of the trial court's discretionary authority to grant the Wife's motion to set aside because it was filed

in the same term of court as the final divorce decree.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs specially.*

FLETCHER, Presiding Justice, concurring specially.

I agree that a party may initiate a divorce action only with the issuance of a summons and personal service of the summons and complaint in accordance with OCGA § 9-11-4. I do not, however, believe this result is mandated by the application of Georgia's amendment rules under OCGA § 9-11-15 and subsequent service rules of OCGA § 9-11-5. OCGA § 9-11-15 permits the liberal amendment of actions, even allowing the wholesale striking of an original pleading and substitution of a new pleading by amendment.[1] Additionally, OCGA § 9-11-5 expressly permits an amendment adding new claims for relief to be served by mail. Under these rules, the mere fact that an amendment raises different questions or seeks relief that replaces relief previously sought is insufficient to require personal service under OCGA § 9-11-4.[2]

Public policy, however, requires that divorce be treated differently because of the unique and important issues involved, including the severing of the marital relationship, custody and support of minor children, support of spouses, and division of property. Therefore, I agree that a party must initiate a divorce action with personal service of a summons and complaint under OCGA § 9-11-4 and may not serve a complaint for divorce under OCGA § 9-11-5 as an amendment to a separate maintenance action.

DECIDED SEPTEMBER 11, 1995.

*Stephen L. Berry,* for appellant.
*Garnett Harrison, Randall C. Sorenson,* for appellee.

---

[1] See *Stith v. Hudson,* 231 Ga. 520, 525 (202 SE2d 392) (1973).
[2] See *Stroud v. Elias,* 247 Ga. 191, 193 (275 SE2d 46) (1981) (amendment to contract action adding claim in tort and for punitive damages could be served under OCGA § 9-11-5).